Next case on this morning's docket is the case of M. Ray, the Marriage of Lee, and we have Mr. Mark Priddingham for the appellant, and Ms. Peggy Bryman for the applied, and then we'll begin with Mark Priddingham. Good morning, Your Honors. May it please the Court. Good morning. As we indicated, I'm Mark Priddingham, and I represent the appellant, Charlotte Lee, in this matter. Your Honors, on its face, this may appear to be a routine case, another divorce case, with the party dissatisfied with the trial court's decision relating to how to distribute profit, not unlike many cases that you see, but I submit to you that it's not a routine case. We're here to consider the plight of two citizens of Southern Illinois of the most modest means who, after more than 30 years of marriage, really have only one asset of any value, their marital residence, a small home in Murfreesboro. As the record shows, the parties lived in this same residence virtually the entirety of their marriage. From the time the parties first inhabited the residence until 1988, the party was held entitled by the husband's parents, Mr. Lee's parents, as was the mortgage loan taken out to construct the house. In 1988, Mr. Lee's mother executed a deed conveying the property to Mr. Lee. Between the time of this conveyance and, let's say, between the time that Mr. and Mrs. Lee first occupied the house and the date of the conveyance, mortgage payments were made. They were made, and this is not a matter of dispute, testimony in this very slim record is unequivocal. Mr. Lee, the husband, made those mortgage payments. Mrs. Lee, the wife, testified she made the mortgage payments, and apparently they, since they were the only two people who testified, and there was testimony that Mr. Lee's mother, on occasion, made mortgage payments. Mr. Lee testified unequivocally, and his wife agreed. They never paid any rent to live there. They paid mortgage payments. By the time of the 1988 conveyance, the mortgage to the bank was paid in full. Did they ever have a contract price on the house? Did they ever enter into an agreement of some type with the parents saying, we're buying the house for such-and-such the amount of the mortgage or a certain price? There is nothing in the record, Your Honor, that indicates that the parties ever signed any written agreement with respect to that. What Mrs. Lee testified to in the hearing was that essentially the deal was mom and dad wanted them to have this house. They were newlyweds with no money and no credit. Mom and dad, who had both credit and some money, went out, acquired the property, secured the mortgage loan, oversaw the construction of the house. The kids, Mr. and Mrs. Lee, moved into the house and started making the mortgage payments. Over the life of the mortgage, sometimes when Mr. and Mrs. Lee didn't have the cash, according to Mr. Lee's testimony, mom would step in and make the mortgage payments. Was there any testimony as to how much the mortgage was or how much they envisioned this all to be? No, Your Honor. The record in this is extremely thin. Is there any evidence of payment other than testimony? No one brought in any evidence to the trial of any of them. And it's an important question because what Mr. Lee's argument was to the trial court is this is my separate non-marital property because it's a gift from my mother. Now, as you know, and as a long line of cases hold in Illinois, in a situation where what otherwise appears to be marital property, where a party claims it's non-marital by virtue of a gift, that party has to prove by the manifest weight of the evidence that in fact it was a gift. Mr. Lee, in other words, had the burden of proof in this case. He had the burden to prove in fact his mother made a gift. And if that, because of the presumption that's created in the statute that this is marital property since it was acquired during the term of marriage, if he's going to defeat that presumption by showing that it's a gift, he has the burden of proof. In order to prove that it's a gift, he has to show three things. One, that his mother intended to make a gift of the house. Two, that the conveyance was in fact gratuitous. And three, that the alleged gift was the exclusive manner in which he acquired any interest in the property. Isn't it true that there is a presumption it is a gift when there's a transfer between mother and child? Yes. However, the law, in a long line of cases cited in my brief, made clear that when you have these two competing presumptions, the presumption that property acquired during the marriage is marital property, and this presumption that conveyance from mother to son is a gift, then the presumptions are essentially eliminated and the party claiming the gift has the burden of proof to prove that in fact it was a gift. So remember, in this case, on this thin record, it was Mr. Lee's burden to prove that the conveyance was a gift. And if you read the trial judge's decision, the trial judge doesn't cite any particular evidence to support the finding that in fact it was a gift. In fact, the trial judge focuses on an argument that Mrs. Lee's lawyer made at trial about she should have some interest in this property by virtue of a resulting trust. The judge focuses the attention in her decision on that question. It never really addresses in any detail the question of did Mr. Lee meet his burden of proving that in fact it was a gift. If you look at the record carefully, he didn't present any evidence. In fact, the evidence that was presented at that first hearing showed that the conveyance wasn't a gift. Both parties testified that they made mortgage payments on the house during the marriage. But there was a difference in characterization of making the mortgage payments. Wasn't he intending that they were made in lieu of rent? No, no. If you read his testimony, the husband's testimony, at page 10 to 11, he says as follows. Now, isn't it true, Mr. Lee, that after you received the house from your mother, there were payments being made every month on the mortgage? Made them up till, I don't know, I can't tell you what year it was. But when I was out of work going to college and what have you, whenever it was, Andy Lee, my mother, made the payments. He never testified that he paid rent. And in fact, at page 6 of the transcript, the question is asking, did the time that you and your wife were together, did you ever pay any rent to your mother to live there? Answer, paid the payments, not rent. That's Mr. Lee's testimony. Now, he also, he testified they didn't pay rent. He testified they paid the mortgage. And as Mrs. Lee testified, they paid, Mr. and Mrs. Lee, she in particular paid the real estate taxes and the insurance payments on it. And Mr. Lee, who had the burden of proof, presented no evidence to rebut Mrs. Lee's testimony that in fact she made those payments. Much is made in the judge's order about the evidence that Mrs. Lee didn't present. But the burden of proof was on Mr. Lee. And he didn't present any evidence that Mrs. Lee didn't make the payments that she said she did. Now, I understood they said that in your brief that they made the mortgage payments up until the time it was paid off. Did they make the final payments or was there an amount owing that was paid off by the mother? I think the latter. And I admit, I extrapolate this a little bit from the thin transcript that we have here. But what it appears happened, what appears to me happened, is the father passed away. And the mother took some money and paid off the balance of the mortgage, which according to the testimony that I see in there, there was one year of payments left. And she paid that off. Now, I'm getting ahead of myself a little bit, but it's important we remember. We all know now, we know that that conveyance was not gratuitous. We all know now that Mrs. Lee in fact took back a lien for every dime she had paid toward that mortgage. We know that. So we know it was merit property. We know that what happened to Mrs. Lee in this case was an injustice. Now, was that injustice the result of a lack of diligence by her lawyer prior to the trial? Because as we know, a timely post-trial motion was filed. The lien was discovered within 30 days after the trial judge issued the decision in this case. So we filed a post-trial motion. Reopen the case so we can introduce this, because I believe that it is dispositive. It shows that the conveyance was not gratuitous, and that's an element of proving a gift. When was the lien placed? 1988. It was filed simultaneously with the deed of conveyance. Now, it was a separate file. They were not attached to one another. The lien was filed. Then the deed was filed. And that related to a new roof or something? The testimony that Mrs. Lee gave at the time, after the hearing was, the question Mr. Lee testified in dread in his case, that he had no idea that his mother had conveyed the property by deed until 2003. Well, in her testimony, Mrs. Lee said, no, that's not true. He knew back in 1988 at the time the conveyance that she was conveying the house to us because we needed to put a new roof on the house. And he wanted to go get a bank loan for the construction cost to put the new roof on. But he obviously, in order to pledge the house, it was collateral. He wanted it in his name. And his mother conveyed the house to him in order to facilitate that transaction. And she still owns the mortgage. She still has the mortgage on it, though. Yes. I mean, she filed the lien certainly suggesting that. How much was the lien for? It doesn't say. Okay. It doesn't say. Now, it's interesting. Now, the trial judge found that a denied post-trial finding, a lack of due diligence because the document obviously existed at the time of the trial, they hadn't found it. It was their fault. The law in Illinois, according to the marriage of wolf case that cited the debris, is that if a party fails to exercise diligence on the basis of affirmative statements by the opposing party, that that lack of diligence doesn't meet, isn't a failure to meet the standard set out in a request for a motion for a new trial based on a newly discovered affidavit. In the wolf case, the husband in a divorce case, the husband and his lawyer relied on statements not made under oath, just statements made by the wife of her intentions regarding where she intended to live after the divorce. Then when she moved, promptly after the divorce, they moved to reopen a new address that she actually always intended to leave. Now, the statements she had made were not under oath. In this case, and the court in that case, of course, said no, that's not a lack of diligence, in case you'd be real. In this case, Mr. Lee filed financial statements, as all ladies in a divorce do, under oath, in which not only did he not list the property, he never listed the lien and sworn his oath that under penalties of perjury that the statements contained in his financial statement were accurate. Based upon that, I submit to you that Mrs. Lee's lawyer really had no reason to believe this document existed, and it was only through dumb luck that we uncovered this document after the hearing. But the reason that the document wasn't found, or at least one of the principal reasons, is it was never listed in Mr. Lee's financial statements. So, under the marriage of oath case, the holding of marriage of oath case, there was not a lack of diligence here. The trial court abused its discretion when it failed to reopen the case to consider this. But I don't think the court even has to address that issue, because in the hearing in chief, Mr. Lee had the burden of proof and clearly failed to meet it. I want to close with one quick comment. This is not a simple case because the mission of sustaining the trial court's order was created. If you sustain the trial court's decision in this case, you provide a blueprint to inscrupulous divorce litigants on how to hide assets from their spouses. We can now use gifts to hide assets. That's not a good precedent to establish. Therefore, I ask that the court reverse the judgment of the trial court and remand this case with an order that property is the parties' marital property and it should be distributed according to law. Thank you. Thank you, Mr. Brady. And you'll have the opportunity for a rebuttal. Ms. Reynard. May it please the court, counsel, my name is Peggy Reynard. The only issue before the trial court was whether the real estate located at 717 North 6th Street in Murfreesboro was James' non-marital property. The evidence was clear that James' parents had this property constructed, placed the mortgage in their name only, and they were making payments on the property. At some point in time, James and Charlotte moved into this residence. When they are financially able, they make the payments. They have no ownership interest in the property at this time. There's no written contract for deed that they are purchasing it for the payments. There's no verbal understanding that they are purchasing this property. They have no ownership interest whatsoever in the property. They're living in the property. They make the payments when they can. Now, Mr. Brigham indicated that James testified at trial that this is not rent. These people were very simple people. They're also a little bit older at this point in time. Our argument is that basically they were making these payments in lieu of rent. They were living in the property to help out the parents. They make the payments. They're in there. There was never any testimony as to how much they paid on the mortgage. No testimony was introduced as to the amount of payments, how long they paid. Nothing of that nature. There was never any physical evidence introduced into this trial court as to canceled checks, number of payments, mortgage payoff. Nothing of that was ever made. In April of 1988, Annie Lee executed the warranty deed to James for the property. The deed on its face stated that it is exempt from the real estate transfer tax. Under that, it shows that James did not pay any consideration for this property. Charlotte argues that the property... In April of 1988, were they living together or were they separated? They were still living together at that time, Your Honor. And they continued then to live together until 1996? Or do you know when they separated? They separated somewhere around 1993 or 1996. I can't remember the approximate date, Your Honor, but that's a rough time frame. Okay. Charlotte argues that the property should be marital because the transfer occurred during the marriage. But the law does presume that a transfer from a parent to a child is a gift. Charlotte also argues, again, that the transfer is not gratuitous. But again, the face of the deed itself states that it was exempt from the transfer tax. And so because of that, there was no consideration paid. Now then, the second issue before this court involves the post-trial motion. And again, I believe that the trial court was correct in denying Charlotte's post-trial motion. After the trial, after the order is entered, she comes in waiting this notice of lien she's had. The notice of lien was recorded in 1988 in the Jackson County Recorder's Office. During the trial, Charlotte and her attorney did not serve any interrogatories upon her client, did not serve any requests to produce upon her client. She could have asked for any documents regarding the real estate. She could have asked for copies of the deed. She could have asked for anything to do with the past mortgages. She could have asked for any documents to do with the real estate. She didn't do it. She didn't ask for a single thing from our client, nothing. She had to show due diligence in discovering that evidence, that she could not produce that evidence at trial by exercising due diligence, and she would also have to show that the evidence is so conclusive that it would probably change the trial course of evidence. The evidence must have existed at the time of the trial but not been discovered. The problem with Charlotte's argument on this appeal is she knew about this lien. She testified at trial that she was aware of the lien. She stated under oath at the trial that Annie Mae Lee and James Lee had a discussion about a roof being on the property, that James wanted to get the property in his name, that Annie Mae Lee was going to make him put a lien against it in her favor. She testified to that at the original hearing. She testified about that lien at the original hearing. She can't come in later saying, oh, I didn't know about this lien. I just found this now. Let me come in now and retry it. I lost the first time. Let me try it a second time. She can't do that, Your Honors. She did not exercise due diligence in finding this document. Counsel argues the marriage of Wool that because of James' statements, Charlotte is excused for knowing about that lien. He argues because we didn't list it in the real estate on the financial statement, didn't list the debt, that her admission for not finding this should be excused. But again, that doesn't get around the fact that she testified at trial that she knew about the lien. Based upon these factors, Your Honors, we believe that the post-trial motion was correctly denied by the trial court and that the property was found to be James' non-marital property. And we would ask that this court affirm the trial court's decision. At least the way I read page 7 of the order, it's got Anna Mae gifted the home to James in 1988 after he moved from the home. So the trial court was wrong on that, Your Honor. How do you think that, you know, if the trial judge had correctly looked at it that they were married at the time, that his mother gifted it to him, it seemed like that would make a difference in determining whether it was marital property or not. I don't believe so. Or if it was a gift. I don't believe so, Your Honor. The deed was solely in James' name. If Anna Mae Lee wanted the property to go to both parties, she could have put the property in both of their names. So the fact that they were still living together I don't believe plays any part in it. Okay. Thank you. Thank you, Your Honor. Thank you. We have the opportunity for rebuttal. Very briefly. With respect to Judge Donovan's question, on page 18 of our briefing in chief, we addressed the errors that the trial court made. And, in fact, as I point out in my brief, I think that those errors that the misunderstanding the judge was operating under when the order was prepared did influence the outcome of the case. Because, clearly, if Mr. Lee wasn't living in the residence at the time the conveyance was made, if, in fact, the parties had separated, one might logically conclude that the parents intended it to be a non-marital gift, given as a result of the separation. But those aren't the facts here. The trial judges thought they were. But those were not the facts here. That was a mistake. The parties continued to live together as husband and wife for some eight years thereafter. Now, Counsel for Mr. Lee suggests that the lack of diligence is demonstrated by Mrs. Lee's testimony about the lease. What Mrs. Lee testified to was in 1988, at the time they needed the roof, she said, I want a lien in return for this conveyance. Mr. Lee's financial statement, she never testified she ever saw a doctor or any evidence of it. And Ms. Reiman is completely correct. They are very simple people. But what we know is that in 2009, when Mr. Lee filed his financial statement, some 21 years later, after the conveyance, he makes no mention of either the property or the lien. No mention at all. Under oath. Mrs. Lee, who knew nothing more than in 1988, Mr. Lee's mother mentioned wanting a lien, she knows nothing more about than that statement. That's all she testified to. Let me ask you this. This new roof, did that new roof go on after 88? I don't know. My understanding was that the conveyance was made in 88 so they could get the loan and do it. And my understanding is that the roof went on at that time. So, yes, 88. Just from the record. I mean, if it's in the record. I'm not sure that the date the roof went on is in the record, but my recollection is the fact that the roof and other improvements, including putting kitchen cabinets in the new kitchen cabinets in the house and other improvements were made after the conveyance by After the conveyance, while he was still living there, did they use marital assets to improve the house? Yes. Now, any idea whose name was on this loan? I mean, from the record, did anybody ask or put in there who borrowed the money, whether her name was on the loan or not? No. Your Honor, I admit that I'd like to think, as I stand here before you all today, that if I had tried this case, with the benefit of hindsight, I'd have put a lot more evidence on it. But let me remind you again, it was Mr. Lee's burden, not Mrs. Lee's. He had the burden to put on the evidence that his mother intended to make a gift of this and that it was gratuitous. The first two elements of proof of gift. He didn't put on any of the evidence you just described to prove that it was gratuitous. In fact, we all know it wasn't gratuitous. She claimed the lien. Secondly, what's the best evidence available about Mrs. Lee's donative intent at the time of the conveyance? Mrs. Lee's testimony herself. But no one called her to testify. She obviously would put a lien on it if she's the mortgage holder, because she doesn't want to be left holding the bag, so to speak. And so she paid the mortgage off before the conveyance of the deed? She paid the balance of the mortgage. That's correct. That's correct. But much of that mortgage, we don't know how much, but much of that mortgage that had been paid prior to that was paid by Mr. and Mrs. Lee of merit. So the conveyance was not gratuitous. It was for consideration both what they had paid until then and the amount, whatever it was, of Mrs. Lee's lien. When you take the lien back, that's no more gratuitous than when the bank gives you a release of your mortgage after you've paid it off. That's not a gratuitous conveyance. The bank's not doing that for free. They're doing it because you finished paying them off. Thank you. Thank you both for your arguments and briefs. We'll take them at our own discretion. Thank you.